UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

JACK BLAIR                                          CIVIL ACTION NO. 18-0567

VERSUS                                              JUDGE S. MAURICE HICKS, JR.

JENNIFER MCDANIEL, LPN,                             MAGISTRATE JUDGE HAYES
ET AL.

**MEMORANDUM RULING**

Before the Court are three Motions filed by Defendants Nurse Jennifer McDaniel (hereinafter "McDaniel") and Dr. Russell Roberts ("Roberts"). McDaniel has filed a Motion for Summary Judgment (Record Document 46)[1] and a Motion to Strike Plaintiff's memorandum in opposition to that Motion (Record Document 63). Roberts has filed his own Motion for Summary Judgment (Record Document 68). For the reasons set forth below, McDaniel's Motion to Strike is hereby **DENIED**; however, both McDaniel's and Roberts' Motions for Summary Judgment are hereby **GRANTED**.

**FACTUAL BACKGROUND**

The instant matter arises from alleged insufficient medical care at the Bossier Parish SHISAP 90 Reentry Facility ("SHISAP") that caused Blair significant vision loss. Due to Blair's inability to read or write as a result of his impaired vision, a Hearing on Oral Complaint was held before Magistrate Judge Hayes on June 21, 2018. See Record Documents 15 & 19. Blair's Oral Complaint served as the Court's primary basis for the

---

[1] McDaniel labels this motion as one for "Summary Judgment and Rule 12(b)(6) Motion to Dismiss." Because she asks the Court to examine evidence outside the pleadings in ruling on this motion, however, the Court will treat it as one for summary judgment. See Cormier v. Turnkey Cleaning Services, LLC, 295 F. Supp.3d 717, 722 (W.D. La. Nov. 8, 2017) (citing Ware v. Associated Milk Producers, Inc., 614 F.2d 413, 414-15 (5th Cir. 1980)).

necessary background information until counsel for Blair filed a Second Amended Complaint on November 25, 2020. See Record Document 62.

Blair was arrested for DWI in October 2017 and sought substance abuse counseling at SHISAP. See id. at ¶6. At the time of his incarceration, Blair had been dealing with severe glaucoma for decades and had already lost vision in his right eye. See id. On December 18, 2017, he began to experience similar pain and symptoms in his left eye. See id. at ¶7. Blair sought medical attention and visited with McDaniel and Roberts on December 21, 2017, explaining his symptoms and need to see a glaucoma specialist immediately. See id. at ¶8. Roberts allegedly told Blair that because he was not a glaucoma specialist there was nothing he could do and he "would go blind," but instructed McDaniel to schedule an appointment with a specialist. Id. at ¶¶8-9.

A few weeks later, Blair asked McDaniel about the status of his appointment and was told that although he had one scheduled, it would not be occurring soon, and she could not provide him with the exact date because of security issues. See Record Document 19 at 8. According to Blair, he told McDaniel that the longer he had to wait for an appointment, the worse the glaucoma would get. See id. at 21. Blair met with Roberts for a second time and was told that he probably did have glaucoma and to prepare to lose his vision. See id. at 8. When Blair responded to Roberts that he could not accept that fate, Roberts allegedly responded "welcome to prison." See id.

Over three months went by before Blair saw a specialist on March 29, 2018. See id. at 9. At this appointment, Blair was told by Dr. Amanda Selchau that although he could have surgery, she would not perform it due to a small CF temporal island of vision in his left eye that would put him at risk of vision loss after surgery. See Record Document 60-

1 at 2. Blair states that upon his release from SHISAP two months later, he saw his own glaucoma specialist, who ordered immediate surgery to save what remained of Blair's eyesight. See Record Document 19 at 20. Blair estimates that he lost over half of his vision as a result of the delay he experienced in seeing a specialist. See id. at 14.

## PROCEDURAL HISTORY

Lee M. Schwalben ("Schwalben") enrolled as counsel for Blair on January 23, 2019. See Record Document 31. Magistrate Judge Hayes issued a scheduling order on May 11, 2020, setting several motion deadlines and a jury trial date of April 19, 2021. See Record Document 43. McDaniel filed a timely Motion for Summary Judgment in July 2020. See Record Document 46. Schwalben requested and was granted an extension to file an opposition memorandum to this Motion, and the deadline for a response was moved to September 21, 2020. See Record Document 50.

Magistrate Judge Hayes held two status conferences in October 2020. The first, on October 5, discussed an additional oral motion for extension made by Schwalben due to the destruction of his home office in Lake Charles by Hurricane Laura. See Record Document 52. Judge Hayes granted Schwalben's motion, extending his opposition deadline to November 6, 2020. See id. The second status conference on October 27 addressed Schwalben's concerns about the April 19 trial date, but explicitly did not seek additional time to file his opposition to McDaniel's Motion. See Record Document 54.

Schwalben was instructed to file a formal motion to voice his concerns over the approaching trial date. See id. However, Schwalben did not file this motion until nearly a month later on November 20, 2020, in which he cited the COVID-19 pandemic, Hurricane

Laura, and Hurricane Delta as reasons for his request. See Record Document 55. Counsel for McDaniel opposed this motion, citing passed deadlines to conduct discovery and to file an opposition. See Record Document 56. The Court agreed that no additional time would be granted, and the scheduling order would remain intact. See Record Document 57. Schwalben responded to this ruling with several immediate filings on November 24 and 25, including a Motion to Amend/Correct Complaint (Record Document 58), a response to McDaniel's statement of material facts (Record Document 59), and the overdue opposition memorandum to McDaniel's Motion (Record Document 60).

Judge Hayes granted the Motion to Amend and Blair's Second Amended Complaint was docketed. See Record Document 62. Answers to this revised pleading have been filed by both Defendants. See Record Documents 66 & 71. Additionally, the instant Motion to Strike (Record Document 63) and Roberts' Motion for Summary Judgment (Record Document 68) have both subsequently been filed. Finally, McDaniel has reiterated her previous Motion for Summary Judgment. See Record Document 67.

**LAW AND ANALYSIS**

Blair claims Defendants acted with deliberate indifference toward his serious medical needs, depriving him of his 5th, 8th, and 14th Amendment rights in violation of 42 U.S.C. § 1983. See Record Document 62 at ¶¶12-18. Although not specifically delineated, Blair also claims violation of the American with Disabilities Act ("ADA"), 42 U.S.C. § 12101, and state law medical malpractice. See id. at ¶¶2, 26-27.

I.     **Motion to Strike**

McDaniel moves to strike Blair's opposition memorandum to her Motion for Summary Judgment for untimeliness. See Record Document 63. The opposition memorandum at issue is not a pleading, and therefore Federal Rule of Civil Procedure 12(f)—the usual standard for evaluating motions to strike—is inapplicable. Rule 6(b)(1)(B) however does apply, and provides, "when an act may or must be done within a specified time, the court may, for good cause, extend the time on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). The Fifth Circuit has articulated several factors to assist in determining whether excusable neglect is present, including (1) the danger of prejudice, (2) the length of delay and its impact on proceedings, (3) the reason for the delay, and (4) whether the movant acted in good faith. See Farina v. Mission Inv. Trust, 615 F.2d 1068, 1076 (5th Cir. 1980).

The Court finds these factors weigh in favor of permitting Blair's opposition memorandum to be included in its summary judgment consideration. Although Schwalben has received multiple extensions, there is no evidence that inclusion of this filing will prejudice Defendants. On the contrary, striking Blair's memorandum would leave McDaniel's Motion unopposed. Schwalben was approximately two weeks overdue on his filing, yet the trial date and scheduling order have remained otherwise intact. Finally, the Court is acutely aware of the devastating effects of the 2020 hurricane season on the Lake Charles area. Recognizing its great discretion in this area, the Court holds McDaniel's Motion to Strike (Record Document 63) is hereby **DENIED**. Blair's opposition memorandum to McDaniel's Motion for Summary Judgment will be considered in the forthcoming analysis.

II. **Summary Judgment**

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). All facts and inferences considered pursuant to a motion for summary judgment must be construed in the light most favorable to the non-movant party. See Dillon v. Rogers, 596 F.3d 260, 266 (5th Cir. 2010). However, summary judgment cannot be defeated by conclusory allegations, unsupported assertions, or presentation of a mere scintilla of evidence. See McFaul v. Valenzuela, 684 F.3d 564, 571 (5th Cir. 2012).

   a. **Deliberate Indifference**

The United States Supreme Court has held "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." Estelle v. Gamble, 429 U.S. 97, 105, 97 S. Ct. 285, 291 (1976); see also Hare v. City of Corinth, 74 F.3d 633, 636 (5th Cir. 1996). The test for deliberate indifference is a subjective one, requiring that the prison official (1) was aware of facts from which an inference of excessive risk to the prisoner's health could be drawn and (2) actually drew an inference that such potential for harm existed. See Herman v. Holiday, 238 F.3d 660, 664 (5th Cir. 2001); see also Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970, 1979 (1994). Such a showing requires evidence that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Domino v. Texas Dept. of

Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001). "Deliberate indifference is an extremely high standard to meet." Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985).

Blair alleges McDaniel and Roberts exhibited deliberate indifference to his complaints of eye pain, resulting in his loss of vision. See Record Document 19. He argues the Defendants should have done more to ensure he saw a glaucoma specialist sooner to prevent further injury. See Record Document 60-1 at 3. Blair also stresses that certain statements made by the Defendants demonstrate "general disdain" and disregard for his health. Record Document 70 at 7. In both their Motions for Summary Judgment, McDaniel and Roberts argue Blair's medical needs were properly respected and provide documentation in support of their actions.[2] See Record Documents 46-2 & 68-2.

Without question, Blair's complaints of eye pain that he believed could result in vision loss qualify as a serious health condition or concern that warranted an appropriate medical response. However, considering the evidence produced by Defendants, the Court finds McDaniel and Roberts took adequate steps to treat Blair, and their actions cannot amount to deliberate indifference.

On December, 18, 2017, Blair filled out a medical request form complaining of left eye pain and requesting an appointment with a glaucoma specialist be made on his behalf. See Record Document 46-4 at 16. On December 21, 2017, Blair visited Roberts and McDaniel, and the process for Blair to see a glaucoma specialist at UHS Ophthalmology Clinic in Shreveport ("UHS") was set into motion.[3] See id. at 34. At

---

[2] McDaniel and Roberts both provide the entirety of Blair's medical record while at SHISAP in support of their Motions. See Record Documents 46-4 & 68-3.
[3] Attached to both motions are contracts for professional services between Bossier Parish and UHS to provide for the medical care of inmates at Bossier Parish prisons. See Record Documents 46-5 & 68-3.

Roberts' behest, McDaniel requested a referral to UHS and attempted to arrange an appointment that same day. See id. On December 27, 2017, UHS scheduled Blair's appointment for March 29, 2018 at 1:30 PM. See id. at 35.

After receiving another request from Blair on January 9, 2018, McDaniel called UHS two days later and left a message requesting an earlier appointment. See Record Document 46-3. The following week, she again attempted to move Blair's appointment up, but was unsuccessful. See id. Roberts also made additional efforts to gain Blair an earlier appointment, calling UHS on January 11 to inquire whether they would see Blair as a walk-in patient. See Record Document 68-4. Roberts was turned away, but it was noted that UHS would call or fax him if an earlier appointment became available. See id.

Based on the evidence presented, no deliberate indifference was exhibited towards Blair. Prompt action was taken to obtain an appointment with a glaucoma specialist, and both Defendants attempted to move Blair's appointment date sooner, albeit unsuccessfully. The response to Blair's medical needs falls well short of the "wanton disregard" required for a finding of deliberate indifference. See Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006).

### b. ADA Claim

Blair's claim for violation of the ADA, 42 U.S.C. § 12101, was added in his Second Amended Complaint. See Record Document 62. The filing itself mentions the ADA only twice, claiming a conclusory violation of the statute by Defendants alongside their § 1983 deliberate indifference violations. See id. at ¶¶2-3. Blair's Complaint does not state a

separate cause of action for an ADA violation, nor offer any allegations directed at this claim.

While not specifically explained as such, Blair's ADA claim must be rooted in the alleged mismanagement of his medical needs by McDaniel and Blair. Having found that both Defendants acted properly in rapidly scheduling and continuing to pursue an earlier appointment for Blair, the ADA claim is without merit. Thus, summary judgment is appropriate.

### c. Louisiana Malpractice Claims

The Second Amended Complaint also gives short shrift to state law malpractice claims, discussing violations of Louisiana Civil Code Article 2315 only in the context of damages. See id. at ¶¶26-27. Blair specifically cites to articles 2315.1 and 2315.2, which detail damages available for survival actions and wrongful death actions, respectively.[4] See id. Blair does, however, argue in his opposition memoranda to both McDaniel and Roberts that the Court should hear the merits of his state malpractice action because the concurrent state case has been stayed by Defendants through a Lis Pendens. See Record Documents 70 at 8-9; 60-1 at 6.

Similar to Blair's ADA claim, recovery for the tort of malpractice relies upon the breach of a duty of care by McDaniel and Roberts. As has been repeatedly stated, the Court has found no such breach. Therefore, no damages would be available to Blair under state law malpractice principles, and these claims must also be dismissed.

---

[4] The Court is particularly puzzled by these citations considering it has been provided no evidence that Blair is deceased.

## CONCLUSION

For these reasons, McDaniel's Motion to Strike (Record Document 63) is **DENIED**. However, McDaniel's Motion for Summary Judgment (Record Document 46) and Roberts' Motion for Summary Judgment (Record Document 68) are hereby **GRANTED**, and all of Blair's claims are hereby **DISMISSED.** A judgment memorializing the terms of the instant memorandum ruling shall issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana on this 1st day of February, 2021.

S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT